Josephine Linker Hart, Justice, dissenting. |1⅞1 dissent because the majority’s opinion embodies mistakes of fact and law. The opinion reveals a fundamental misunderstanding of an individual’s constitutional right to contract. Further, it is an advisory opinion — something that this court routinely claims that it does not issue. The majority also misunderstands the circuit court’s finding with regard to Mr. Hartness’s proof of value. Mr. Nuckles’s defense to Mr. Hartness’s breaeh-of-warranty claims was that Mr. Hartness failed to give him sufficient notice of the defect. While there was'a disagreement at trial as to whether Nuck-les promised to restore Mr. Hartness’s 1968 Pontiac Firebird convertible to “Barrett-Jackson” quality, it was not disputed that Mr. Hartness was promised at. least a quality of restoration that was better than what Mr. Hartness expected to .receive when he took possession of his car. Accordingly, there is arguably a disagreement about the terms of the express warranty in the oral contract. Nonetheless, there is no dispute that an express warranty was made. Thus, the existence of a warranty was not an issue at trial. The majority acknowledges that it was never raised, briefed, or ruled on by the circuit court, yet concludes that the reason for the lack of a ruling is that the issue was “overlooked.” In my view, for the majority to make such a-conclusion is an obvious mistake of fact. This error was compounded by this court deciding, on its own motion, to make the existence of a warranty a threshold issue, finding that this issue was not ruled on by the circuit court, and using the failure to obtain a ruling as its rationale for barring Mr. Hartness’s argument on appeal. The majority’s justification for its holding is that the Arkansas Supreme Court has never decided whether “breach of warranty claims should even exist for a contract |isthat is exclusively for services.”[1] The majority clearly misunderstands the role of the Arkansas Supreme Court. We are not lawgivers. Our job is to interpret the law. The right to contract is inalienable and guaranteed by our state, constitution, and this court should not create wholesale conditions that will affect all service contracts. Leep v. St. Louis, I.M. & S. Ry. Co., 58 Ark. 407, 25 S.W. 75 (1894). Accordingly, the court has exceed-, ed its power; it has only the power to opine on the constitutionality of a .limitation imposed on the right, to contract. Id. Inexplicably, • having barred Mr. Hartness’s argument, the majority' nonetheless goes on to consider whether the notice requirement stated in Arkansas Code Annotated section 4-2-607(3)(a), ,a statute, dealing with warranties in the sale .of goods, should apply “if such warranties do exist.” There is no clearer example of an advisory opinion. Black’s Law Dictionary, 35-36 (6th ed. 1990) defines advisory opinions as follows: , - Such may be rendered by a court at the request of the government or an interested party indicating how the court would ruie on a matter should adversary litigation develop. An advisory opinion is thus an interpretation of the law without binding effect. While the International Court of Justice and some state courts will render advisory opinions, the federal courts will not; their jurisdiction being restricted to cases or controversies. | uHeretofore, this court did not render advisory opinions. See, e.g., Arkansas State Hwy. & Transp. Dep’t v. O.J.’s Serv. Two, Inc., 2015 Ark. 388, 473 S.W.3d 24; Arms v. State, 2015 Ark. 364, 471 S.W.3d 637; Chandler v. Martin, 2014 Ark. 219, 433 S.W.3d 884. Lastly, in my view, the majority also makes a mistake of fact when it purports to affirm the circuit court’s finding that Mr. Hartness “presented no evidence regarding his ‘damages.’ ” In its findings of fact, the circuit court acknowledged that there was at least some substandard work: The Court has no doubt that at least some of the issues complained of could have, and should, have, been performed better. For example, the presence of sand in the .vehicle seems inexcusable along with some- cosmetic issues depicted in the photographs taken shortly after Plaintiff took possession of the vehicle. However, any damages awarded for those items would require speculation by the Court. Mr. Harness testified that he was not only over-charged for work performed, but also charged for work that was never performed. I am also mindful that Mr. Harness also testified that he believed he was entitled to full refund. Regarding Mr. Harness’s desire for a complete refund, there is significance in the circuit court’s finding that there was a lack of evidence of the value of the vehicle before and after Nuckles’s involvement, as well as the lack of expert testimony to establish the usual and customary time and expense for such restoration. However, while Mr. Harness may not have presented proof that he was entitled to a complete refund, Mr. Nuckles conceded that, based on the pictures and live view of the. car that was conducted during .the trial, a portion of the work was not up to standard and required a definite amount of shop time to remedy. Suffice it to say that there is a difference between no evidence and incomplete evidence. Certainly Mr. Hartness | ^presented evidence whereby a trier of fact could find some damages. I would therefore reverse and remand this case for the circuit court to assign a value to sub-standard work.