JOSEPHINE LINKER HART, Justice liA Polk County jury convicted Melissa McCann Arms of the. introduction of a controlled substance into the body of another person. She was sentenced to twenty years in the Arkansas Department of Correction. On appeal, Arms argues that the circuit court erred in (1) not granting her directed-verdict motion; (2) not granting her motion to dismiss for lack of jurisdiction when there was no evidence that she consumed or introduced, ingested or inhaled any controlled substance in the body of another while in Polk County; and (3) not granting her motion to dismiss based upon the injection being in the defendant and not her unborn child. This case was originally filed in the court of appeals, which affirmed Arms’s conviction. Arms v. State, 2015 Ark. App. 27, 453 S.W.3d 709. We granted Arms’s petition for review. When we grant a petition to review a decision of the court of appeals, we treat the matter as if the appeal had been originally filed in this court. .Pickle v. State, 2015 Ark. 286, 466 S.W.3d 410; |2On August 27, 2013, Arms was charged by information in Polk County with introducing two controlled substances, codeine and methamphetamine, into the body of her baby, J.A., on or about November 1, 2012. Prior to trial, Arms moved to dismiss the charges, asserting that the Polk County Circuit Court lacked jurisdiction and venue to try her case. She asserted that she resided in Sevier County and was transported by ambulance from her home in DeQueen, which' is in Sevier County, to Mena Regional Medical Center in Polk County. Her child was born in Mena. ■ She alleged that she had taken no drugs in Polk County prior to the birth of her child. Arms subsequently filed a second motion to dismiss, asserting that she was charged under a statute that did not mention unborn children. She argued that the controlled substance was introduced only into her body and that there was no evidence of the introduction of the controlled substance into the infant after it had been born. The circuit court dénied both motions. It found that any “introduction” of substances would have continued during the period Arms was in the hospital. Further, while the circuit court conceded that the statute did not mention an unborn child, it found that the “introduction,” if it occurred, would have continued for a time after the birth of the child. Finally, the circuit court ruled that, for the purposes of this statute, a human body would include a fetus. The State nol-prossed the count involving codeine, and Arms proceeded to trial on the charge of introducing methamphetamine into the body of her child. Amber Williams, a registered nurse employed by Mena Regional Health System (Mena Regional), testified that on November 1, 2012, Arms arrived at Mena Regional by | ^ambulance. Arms showed signs of being in labor, so Williams admitted Arms to the hospital. Williams testified that the emergency-medical personnel told her that appellant was acting very erratic and out of control, and she recalled seeing Arms “thrashing in the bed,” and acting “very out of control.” As a routine part of the initial assessment, Williams asked and Arms denied having taken any drugs. Williams stated that she had reason to doubt Arms’s denial and, because of Arms’s unusual behavior, she contacted the police. Stacie Floyd, another registered nurse at Mena Regional, testified that she came into contact with Arms soon after she was admitted to the hospital. Floyd stated that Arms was acting atypically for someone in the early stages of labor. It was hard for the staff to keep Arms in bed and on the monitor. A toxicology screen was ordered for Arms, and, according to Floyd, she was present when Arms was confronted with the results of the baby’s drug test. Arms denied taking drugs, but stated that she was at a party and something might have been put in her food. Registered nurse Amber Cobb testified that she was working at Mena Regional when Arms gave birth. According to Cobb, she performed the delivery. She recalled that Arms’s urine tested positive for methamphetamine. When she told Arms the results, Arms became very angry and upset. Nonetheless, Arms denied using any illegal substances. Arms was crying .hysterically, almost to the point of hyperventilating. She- opined that Arms’s reaction caused the baby’s fetal heart rate to drop to an abnormally low level. When the child was born, Cobb recalled that he did not cry, even after being stimulated. He was flaccid and limp and had a facial droop on one side of his face. Cobb further testified that when a baby is ^delivered, there is a period of time when the umbilical cord is attached and the baby is outside the womb. The cord is cut within a few seconds to a few minutes. Elena Cannon, investigator for the Polk County Prosecuting Attorney’s office, testified that she served a search warrant on Arms to take blood and urine samples while Arms was in labor. The warrant also authorized samples to be taken from the child. The samples were taken to the Arkansas State Crime Lab (Crime Lab) in Little Rock. Leanne Hazard, a forensic toxicologist for the Crime Lab, testified that she performed tests on the blood drawn from Arms’s baby. The samples tested positive for codeine, amphetamine, methamphetamine, norfentanyl, and lidocaine. Don Riddle, also a forensic toxicologist with the Crime Lab, testified that he tested Arms’s blood and urine and the baby’s urine. He stated that Arms’s samples tested positive for methamphetamine. He also found evidence of amphetamine in the baby’s urine. Registered nurse Patina Fair testified that she cared for Arms’s child while he was in the nursery. She stated that the child exhibited the signs associated with withdrawal from a controlled substance. According to Fair, she spoke with Arms right before she took the child to the nursery, and Arms admitted to her that she “did this” to the child. Fair told Arms that the baby was suffering withdrawal from methamphetamine use. Michael May, the Senior Investigator for the 18th West Judicial District Drug Task Force, testified that he was asked by Elena Cannon to assist in the investigation. Together, they interviewed Arms at the hospital after the delivery. Arms consented to the interview and admitted that she had used methamphetamine four times while she was pregnant, including | ¿the day before she was admitted to the hospital in labor. Appellant told May that she injected methamphetamine three of the four times during her pregnancy, but aside from a few “puffs on a bowl” on Halloween, her intravenous use of methamphetamine was a month, to a month and a half earlier. At the close of the State’s case, Arms moved for a directed verdict. She stated, The State has not proven that the Defendant, did cause to be ingested, inhaled or otherwise introduced into the human body of another person a controlled substance, specifically methamphetamine. We still have the same elements here of the human body and the ingested or ingested or inhaled or otherwise introduced. The State countered that Arms admitted she had ingested methamphetamine while pregnant, and the drug was transmitted through the umbilical cord to the child. The circuit court denied Arms’s directed-verdict motion. Arms also renewed her motions to dismiss, which were likewise denied. Arms was convicted as charged. On appeal, Arms first argues that the circuit court erred in not granting her directed-verdiet motion. She asserts that Arkansas Code Annotated section 5-13-210(b)(c)(l) does not mention fetus or unborn child. She further argues that the evidence is clear that she did not introduce a controlled substance into her own body or the body of her child while in Polk County. She concedes that the unborn child “may have absorbed” some controlled substance from the mother, but further asserts that there is no evidence that she injected the controlled substance directly into the body of the child before it was born. This court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. Sweet v. State, 2011 Ark. 20, 370 S.W.3d 510. In our review, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. Id. 1 (¡Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. Id. We view the evidence in the light most favorable to the verdict, and we consider only the evidence supporting the verdict. Id. In our review, we leave matters of credibility to the trier of fact; the trier of fact is free to believe all or part of any witness’s testimony and may resolve questions of conflicting testimony and inconsistent evidence. Id. Arkansas Code Annotated section 5-13-210 (Repl. 2013), states in pertinent part: (b) It is unlawful for any person to administer or cause to be ingested, inhaled, or otherwise introduced into the human body of another person a controlled substance as defined by the Uniform Controlled Substances Act, § 5-64-101 et seq., unless the controlled substance has been ordered for the person receiving the controlled substance by a licensed practitioner, licensed by the state to prescribe controlled substances in the schedule involved and this being for a legitimate medical purpose. • (c) Any person who violates this section with respect to:' (2) Any other controlled substance in Schedule I, Schedule II, or Schedule III is guilty of a Class B felony. We first note that section 5-13-210 refers only to á “person.” It makes no mention of a fetus or an unborn child. Our criminal code does define a fetus as a “person,” but only for certain homicide offenses. Arkansas Code Annotated section 5-1-102 in pertinent part states: (13)(A) “Person,” “actor,” “defendant,” “he,” “she,” “her,” or “him” includes: (i) Any natural person; and (B)(i)(a) As used in §§ 5-10-101-5-10-105, “person” also includes an unborn child 17in útero at any stage of development. (iii) Nothing in this subdivision (13)(B) shall be construed to allow the charging or conviction of a woman with any criminal offense in the death of her own unborn child in útero. Significantly, our criminal code expressly limits criminalizing conduct with respect to an unborn child to homicide offenses, and even then, does not allow a mother to be charged or convicted of any homicide offense while her child is in útero. As part of our strict construction, we are guided by the maxim -expressio unius est exclusio alterius — the express inclusion of an unborn child with regard to homicide offenses excludes a similar inclusion for non-homicide offenses. See Bolin v. State, 2015 Ark. 149, 459 S.W.3d 788. Accordingly, none of Arms’s conduct could offend section 5-13-210 while her child was in útero. We must therefore focus on the evidence as it relates to Arms’s conduct during the narrow window of time when the child was outside the womb, but still attached to the placenta by the umbilical cord. The record is completely devoid of any evidence that Arms directly introduced methamphetámine into her baby’s system by causing the child to ingest or inhale it. Therefore, to sustain this conviction, this' court would be required to construe section 5-13-210 to mean that Arms’s own use of the drug meant “otherwise introduc[ing]” it to the child. We note that there was no evidence of an ongoing transfer of the méthamphétamine that was in Arms’s system after the child was born. The jury would thus have been forced to speculate that Arms was “otherwise introducing” the drug into the child at that point. When a jury reaches its conclusion by resorting to speculation or conjecture, the verdict is not supported |sby substantial evidence, and we must reverse and dismiss the charges. Pridgett v. State, 276 Ark. 52, 631 S.W.2d 833 (1982). However, there is an even more fundamental problem with the State’s proof. Section 5-13-210 does not expressly criminalize the passive bodily processes that results in a mother’s use of a drug entering her unborn, or newborn child’s system. Further under the cannon of construction ejusdem generis, which provides that “when general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words,” section 5-13-210 cannot be construed to include such a passive process. See Edwards v. Campbell, 2010 Ark. 398, 370 S.W.3d 250. The other enumerated conduct criminalized by section 5-13-210, “to administer or cause to be ingested, inhaled” entail an active undertaking to dose another person with a controlled substance. Thus, “otherwise introduced” must be interpreted to refer to an active process. Accordingly, Arms’s conviction cannot stand; Our construction of criminal statutes is strict, and we resolve any doubts in favor of the defendant. Heikkila v. State, 352 Ark. 87, 98 S.W.3d 805 (2003). The courts cannot, through construction of a statute, create a criminal offense that is not in express terms created by the Legislature. Id. We do not have the authority to declare that an act is within the criminal laws of this state by implication. Id. ■ We therefore reverse and dismiss Arms’s conviction. Because we reverse and dismiss on this point, we need • not consider Arms’s other arguments. Reversed and dismissed; court of appeals opinion-vacated. Brill,-C.J., and Wood, J. concur.