IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

———————————

No. 15-0021

———————————

**FILED**

**May 27, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Respondent

v.

STEPHANIE ELAINE LOUK,
Petitioner

_____

Appeal from the Circuit Court of Nicholas County
The Honorable Gary L. Johnson, Judge
Criminal Case No. 14-F-13

VACATED AND REMANDED FOR JUDGMENT OF ACQUITTAL

_____

Submitted: April 19, 2016
Filed: May 27, 2016

Jason D. Parmer, Esq.
Public Defender Services
Charleston, West Virginia
Counsel for the Petitioner

Diana Panucci, Esq.
13th Judicial Circuit
Public Defender Corp.
Charleston, West Virginia
Farah Diaz-Tello, Esq.
National Advocates for Pregnant Women
New York, New York
Counsel for Amici Curiae

Patrick Morrisey
Attorney General
Elbert Lin
Solicitor General
Julie A. Warren
Assistant Attorney General
Charleston, West Virginia
Counsel for the Respondent

CHIEF JUSTICE KETCHUM delivered the Opinion of the Court.

JUSTICE BENJAMIN concurs and reserves the right to file a concurring Opinion.

JUSTICE DAVIS concurs and reserves the right to file a concurring Opinion.

JUSTICE LOUGHRY dissents and reserves the right to file a dissenting Opinion.

JUSTICE WORKMAN dissents and reserves the right to file a dissenting Opinion.

SYLLABUS BY THE COURT

1.      "It is not for this Court arbitrarily to read into a statute that which it does not say.  Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syllabus Point 11, *Brooke B. v. Ray*, 230 W.Va. 355, 738 S.E.2d 21 (2013).

2.      The Legislature did not make any reference to an "unborn child" or "fetus" in W.Va. Code § 61-8D-4a [1997].  The statute only refers to a parent neglecting "a child" under his or her care, custody or control.   Therefore, W.Va. Code § 61-8D-4a, our child neglect resulting in death statute, does not encompass prenatal acts that result in harm to a subsequently born child.

Chief Justice Ketchum:

Petitioner Stephanie Louk ("Ms. Louk") was convicted of child neglect resulting in death in violation of W.Va. Code § 61-8D-4a [1997], and sentenced to three to fifteen years of incarceration by the Circuit Court of Nicholas County. Ms. Louk appeals the circuit court's December 9, 2014, sentencing order. She argues that when the Legislature wrote our child neglect resulting in death statute, it did not include prenatal acts that result in harm to a subsequently born child.

We have read the law and it is clear: when enacting our child neglect resulting in death statute, the Legislature did not criminalize a mother's prenatal act that results in harm to her subsequently born child. We therefore reverse the circuit court's December 9, 2014, sentencing order. Although we recognize that there may be significant policy implications and social ramifications surrounding the present issue, our review is confined to the plain language of the statute enacted by the Legislature. It is the duty of the Legislature to consider facts, establish policy, and embody that policy in legislation. This Court does not sit as a superlegislature, commissioned to pass upon the social, political, or scientific merits of statutes pertaining to proper subjects of legislation. It is the duty of this Court to enforce legislation unless it runs afoul of the State or Federal

1

Constitutions. Thus, the Court's duty in this matter is to enforce the plain language of the

child neglect resulting in death statute enacted by the Legislature.[1]

---

[1] We acknowledge the contribution of amici curiae brief filed by counsel Diana Panucci and Farah Diaz-Tello on behalf of the following parties: West Virginia State Medical Association; West Virginia Perinatal Partnership; West Virginia Society of Addiction Medicine; West Virginia Lawyer Assistance Program; American College of Obstetricians and Gynecologists; American Society of Addiction Medicine; Association of Reproductive Health Professionals; C.A.R.E. Alliance NW, Inc.; Drug Policy Alliance; Drug Policy Forum of Hawai'i; Harm Reduction Coalition; Institute for Health and Recovery; International Centre for Science in Drug Policy; Legal Action Center; Medication Assisted Recovery Services; National Alliance of Medication Assisted Recovery; National Alliance for Medication Assisted Recovery of Tennessee; National Perinatal Association; National Women's Health Network; North American Society for Psychological Obstetrics and Gynecology; National Council on Alcoholism and Drug Dependence, Inc.; National Latina Institute for Reproductive Health; Project R.E.S.P.E.C.T.; Student Assistance Services; Ronald Abrahams, MD; Annette Ruth Appell, JD; Elizabeth M. Armstrong, PhD, MPA; Sheila Blume, MD; Adam J. Breinig, DO, FAAFP; Norma Finkelstein, PhD, LICSW; Nikki Easterling, M.Ed., CDP, CC; Fonda Davis Eyler, PhD; Julia B. Frank, MD; P. Bradley Hall, MD, DABAM, FASAM; Wanda M. Hembree, MD; T. Stephen Jones, MD, MPH; Karol Kaltenbach, PhD; Mary Faith Marshall, PhD, FCCM; Anna Mastroianni, JD, MPH; John J. McCarthy, MD, APBN, ABAM; Howard Minkoff, MD; Ellen Morehouse; Daniel R. Neuspiel, MD, MPH; Robert G. Newman, MD, MPH; Ronni Rittenhouse, PhD; Kelley Saia, MD; Sharon Stancliff, MD, FAAFP; Zachary Talbott, MS, CMA; Bruce Trigg, MD; Michael Vernon, PhD, HCLD, ELD; Linda L.M. Worley, MD; Tricia E. Wright, MD, MS, FACOG, Diplomate ABAM; Jessica Young, MD, MPH; and Sherri Young, DO, FAAFP.

The amici urge this Court to reverse Ms. Louk's conviction and rule that the plain language of our child neglect resulting in death statute enacted by the Legislature does not encompass a prenatal act that results in harm to a subsequently born child. We value their contributions to this case and have considered their brief in conjunction with the parties' arguments.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 11, 2013, Ms. Louk injected methamphetamine into her left arm. She was thirty-seven weeks pregnant at that time. A few hours after injecting the methamphetamine, Ms. Louk experienced breathing problems and went to Summersville Regional Hospital. Dr. Tracey Lester treated Ms. Louk upon her arrival at the hospital. Dr. Lester testified that Ms. Louk presented to the emergency room with acute respiratory distress which was caused by her methamphetamine use. Dr. Lester described acute respiratory distress and its effect on Ms. Louk and her fetus[2] as follows:

---

[2] The terms "fetus" and "unborn child" are often used interchangeably. Justice Cleckley discussed the use of these two terms in *Farley v. Sartin*, 195 W.Va. 671, n. 3, 466 S.E.2d 522, n. 3 (1995), stating:

> At this gestational age of development, an unborn child often is referred to as a fetus. Biologically, a fetus is defined as "the unborn offspring in the post embryonic period after major structures have been outlined (in man from seven or eight weeks after fertilization until birth*)." Black's Law Dictionary* 621 (6th ed. 1990). . . .

> Throughout the cases and literature reviewed and cited by this Court, the terms "fetus" and "unborn child" frequently are used interchangeably. . . . By our use of the phrase "unborn child" in the context of this opinion, we are sensitive to those who may have philosophical, religious, or other reasons why they prefer the term "fetus" over the phrase "unborn child" or vice versa. In this respect, our reference is not designed to pass judgment upon these reasons nor do we

(continued . . .)

3

It can cause you to get fluid in your lungs. . . . In that situation, your lungs fill up with fluid, and your blood stream is not able to get oxygen from your lungs and take it to your brain and vital organs to provide your body, you know, fuel to survive. . . .

When you are deprived oxygen, whether you are pregnant or not, your body shunts all available blood to the brain and the heart for survival. . . .

And with a pregnant patient, blood is going to be shunted away from the baby, away from the placenta to try to keep the mother alive. Any available oxygen is going to be going to the brain and the heart of the mother to try to sustain life. . . .

The baby would normally be getting plenty of oxygen from the mother, but, in this situation where the mother isn't getting enough oxygen to survive herself, any available oxygen's going to the mother, and it's going to be shunted away from the baby to the mother for her survival.

Due to concerns about Ms. Louk's fetus being deprived of oxygen, Dr. Lukasz Rostocki performed an emergency Cesarean section and delivered the child. The child, Olivia Louk, was born "essentially brain dead," according to Dr. Susan Venuti, the forensic pathologist who performed Olivia Louk's autopsy. Dr. Venuti testified that upon being born, Olivia Louk "had no movement, no spontaneous respirations, and they had to immediately put her on a ventilator to help her breathe." Olivia Louk died eleven days after she was born. Her death certificate states:

---

intend to invoke an emotional response on the part of the reader.

4

**Cause of Death and Contributory Conditions/Factors**: It is our opinion that Olivia Louk, an 11 day old female infant who resided in the hospital since birth, died as the result of anoxic encephalopathy following the emergent delivery by Cesarean section to a mother with cardiorespiratory insufficiency in the setting of methamphetamine, benzodiazepine and opioid intoxication. The mother was diagnosed with a new onset cardiomyopathy, clinically diagnosed as possibly stress-induced or drug-induced, and less likely a peripartum cardiomyopathy. . . .

This infant's death occurred in the setting of maternal drug abuse; however, other natural causes contributing to the mother's cardiorespiratory insufficiency cannot be excluded by the postmortem examination of this newborn.

(Boldface in original.)

On January 14, 2014, Ms. Louk was indicted by a Nicholas County Grand Jury on one felony count of child neglect resulting in death in violation of W.Va. Code § 61-8D-4a. The indictment charged Ms. Louk with ingesting methamphetamine which resulted in the death of her child.

Ms. Louk filed a motion to dismiss the indictment, arguing that the law "regarding whether the state can prosecute a pregnant woman for a neonatal loss allegedly caused by a drug overdose during pregnancy is abundantly clear: the legislature has refused to make women criminally liable for the outcome of their pregnancies." The circuit court denied the motion to dismiss. During a pretrial hearing on Ms. Louk's motion to dismiss, the circuit court explained its ruling as follows: "I'm going to deny the motion to dismiss. I think the child was alive – born alive, and it died eleven days later, and, I mean – and when we get down to doing instructions in this case, I'll have to be a

5

little more specific about what – what comes within that statute, but we will – we'll cross that bridge when we get to it."

Following a two day jury trial, Ms. Louk was convicted of one felony count of child neglect resulting in death. The circuit court subsequently ordered that she be incarcerated for three to fifteen years. Ms. Louk appeals the circuit court's sentencing order.

## II.

## STANDARD OF REVIEW

This Court's standard of review is set forth in Syllabus Point 1 of *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). It states, "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."

## III.

## ANALYSIS

The issue before this Court is whether a pregnant woman who ingests a controlled substance which results in harm to her subsequently born child can be charged with child neglect resulting in death, as set forth in W.Va. Code § 61-8D-4a. The offense of child neglect resulting in death under W.Va. Code § 61-8D-4a provides:

> If any parent, guardian or custodian *shall neglect a child* under his or her care, custody or control and by such

6

neglect cause the death of said child, then such parent, guardian or custodian shall be guilty of a felony and, upon conviction thereof, shall be fined not less than one thousand dollars nor more than five thousand dollars or committed to the custody of the division of corrections for not less than three nor more than fifteen years, or both such fine and imprisonment.

(Emphasis added.) The term "child" is defined in W.Va. Code § 61-8D-1(2): "'Child' means any person under eighteen years of age not otherwise emancipated by law."

Ms. Louk argues that an individual cannot be charged with child neglect resulting in death under W.Va. Code § 61-8D-4a for prenatal ingestion of a controlled substance because an "unborn child" or "fetus" is not a "child" under the statute. By contrast, the State contends that "a child injured prior to birth but born alive, is a 'child' as defined in W.Va. Code § 61-8D-1(2), and may be a victim of parental neglect pursuant to W.Va. Code § 61-8D-4." Further, the State argues that Ms. Louk's criminal liability for Olivia Louk's death "is consistent with the common law 'born alive' rule."

This issue requires us to examine W.Va. Code § 61-8D-4a. We therefore begin with a review of our rules of statutory construction. This Court has held that in deciding the meaning of a statutory provision, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995); *see also* Syllabus Point 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without

7

resort to interpretation."); and Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

Additionally, this Court has held that "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore v. State Farm Gen. Ins. Co.*, 202 W.Va. 591, 596, 505 S.E.2d 654, 659 (1998) (internal quotations and citation omitted). With these rules of statutory construction in mind, we turn to W.Va. Code § 61-8D-4a.

The present dispute centers around the parties' conflicting interpretations of the word "child" contained in W.Va. Code § 61-8D-4a. As this Court recognized in *West Virginia Health Care Cost Review Authority v. Boone Memorial Hosp.*, 196 W.Va. 326, 472 S.E.2d 411 (1996), "[i]t is a fundamental principle of statutory construction that the meaning of a word cannot be determined in isolation, but it must be drawn from the context in which it is used." *Id*. at 338, 472 S.E.2d at 423.

Upon our review of W.Va. Code §61-8D-4a, we determine that the statute is not ambiguous. The plain language of W.Va. Code § 61-8D-1(2) states that a child is "any person under eighteen years of age[.]" This statutory definition does not include either an "unborn child" or a "fetus" within the meaning of "child." Similarly, W.Va.

8

Code § 61-8D-4a does not include either an "unborn child" or a "fetus," rather, *it only refers to a parent neglecting "a child"* under his or her care, custody or control.

While 61-8D-4a does not mention prenatal conduct or make any reference to an "unborn child" or a "fetus," a number of other West Virginia statutes specifically address unborn children. Multiple courts outside of our jurisdiction, confronted with this issue, have found that because the Legislature specifically provides for the protection of an unborn child, this "demonstrates the ease and clarity with which the legislature may, if it so chooses, apply a statute to the unborn." *State v. Deborah J.Z.,* 228 Wis.2d 468, 477, 596 N.W.2d 490, 494 (1999). *See also State v. Dunn*, 82 Wash.App. 122, 128, 916 P.2d 952, 955 (1996) ("When the Legislature intends to include the fetus in a class of criminal victims, it specifically writes that language into the statute."). Like these other jurisdictions, we conclude that when our Legislature intends to include an unborn child in a statute, it writes that language into the statute. Our Legislature has addressed unborn children in a variety of other statutes, and has done so with absolute clarity.

For instance, in 2005, the Legislature passed the Unborn Victims of Violence Act, W.Va. Code § 61-2-30 [2005]. The Unborn Victims of Violence Act defines a "fetus" as "a developing human that has ended the embryonic period and thereafter continues to develop and mature until termination of the pregnancy or birth." W.Va. Code § 61-2-30(b)(2). The Unborn Victims of Violence Act specifically provides that a "fetus" can be the victim of certain violent crimes including murder, voluntary manslaughter, attempt to kill or injure by poison, stalking, wanton endangerment by use

9

of fire, assault during the commission of a felony, malicious and unlawful assault, and domestic battery. W.Va. Code § 61-2-30(c). The Unborn Victims of Violence Act does not provide for the prosecution of a pregnant mother based on prenatal conduct resulting in harm to the subsequently born child. In fact, the statute exempts pregnant women from criminal liability for the offenses set forth in W.Va. Code § 61-2-30(c), stating "[t]he provisions of this section do not apply to: . . . Acts or omissions of a pregnant woman with respect to the embryo or fetus she is carrying." W.Va. Code § 61-2-30(d)(5).

In addition to the Unborn Victims of Violence Act, the Legislature specifically addressed "unborn children" and defined the term "fetus" in W.Va. Code § 16-2M-1, *et seq.* [2015]. This statute makes a number of express references to an "unborn child." *See* W.Va. Code §§ 16-2M-3(3), (5), (10). Further, the term "fetus" is defined in W.Va. Code 16-2M-2(4) as "the developing young in the uterus, specifically the unborn offspring in the postembryonic period from nine weeks after fertilization until birth."

Unborn children are also expressly addressed in the West Virginia Uniform Trust Code, W.Va. Code § 44D-1-101, *et seq.* [2011]. This statute specifically protects the rights of an "unborn individual" who has an interest in a matter arising under the Uniform Trust Code. W.Va. Code § 44D-3-305(a) provides:

> If the court determines in a judicial proceeding that an interest is not represented under this chapter, or that the otherwise available representation might be inadequate, the court may appoint a representative to receive notice, give consent, and otherwise represent, bind, and act on behalf of a minor, incapacitated or **unborn individual**, or a person

whose identity or location is unknown. A representative may be appointed to represent several persons or interests.

(Emphasis added.) Similarly, the Uniform Trust Code states "[a] parent may represent and bind the parent's *minor or unborn child* if a conservator or guardian for the child has not been appointed[.]" W.Va. Code § 44D-3-303(5) (emphasis added). Finally, the Uniform Trust Code provides that "[i]f *a minor or unborn person* is not otherwise represented under this section, a grandparent or more remote ancestor may represent and bind that *minor or unborn person*." W.Va. Code § 44D-3-303(6) (emphasis added).

The Legislature has defined the term "minor" in the same manner in which it defined "child." "'Minor' means an individual who is under eighteen years of age." W.Va. Code § 16-19-3(18). The fact that the Legislature included both "minor" and "unborn child" in W.Va. Code § 44D-3-303(5) demonstrates that these two terms are not synonymous and have distinct meanings.[3] The terms "minor" and "child" have been

---

[3] In Syllabus Point 7 of *Ex parte Watson*, 82 W.Va. 201, 95 S.E. 648 (1918), this Court held:

> It is presumed that the legislature had a purpose in the use of every word, phrase and clause found in a statute and intended the terms so used to be effective, wherefore an interpretation of a statute which gives a word, phrase or clause thereof no function to perform, or makes it, in effect, a mere repetition of another word, phrase or clause thereof must be rejected as being unsound, if it be possible so to construe the statute as a whole, as to make all of its parts operative and effective.

11

defined as a person or individual who is under the age of eighteen. By contrast, a "fetus" is "a developing human that has ended the embryonic period and thereafter continues to develop and mature until termination of the pregnancy or birth." W.Va. Code § 61-2-30(b)(2).

It is clear from the foregoing statutes that when the Legislature intends to include an "unborn child," "fetus," "unborn individual," or "unborn person" within a statute, it does so with absolute clarity. The Legislature did not include "unborn child," "fetus," "unborn individual," or "unborn person" in the child neglect causing death statute, W.Va. Code § 61-8D-4a. Nor did it include any of these terms in the definition of "child" contained in W.Va. Code 61-8D-1(2). "It is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syllabus Point 11, *Brooke B. v. Ray*, 230 W.Va. 355, 738 S.E.2d 21 (2013).

Next, we agree with Ms. Louk that, were we to interpret W.Va. Code § 61-8D-4a to reach the prenatal conduct on which her prosecution was based, we would offend due process notions of fundamental fairness and render the statute impermissibly vague. This Court has addressed the purported vagueness of a criminal statute, holding that "'[a] criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication.' Syllabus Point 1, *State v. Flinn*, 158

12

W.Va. 111, 208 S.E.2d 538 (1974)." Syllabus Point 1, *State v. Bull*, 204 W.Va. 255, 512 S.E.2d 177 (1998).  Because the statutory reference to "child" in W.Va. Code § 61-8D-4a does not include any mention of an "unborn child" or a "fetus," Ms. Louk could not reasonably have known she could be prosecuted for child neglect based on her prenatal conduct. *See Georgia v. Luster*, 204 Ga.App. 156, 419 S.E.2d 32, 34 (1992) (pregnant woman could not have known use of illegal drugs that affected the fetus could subject her to criminal prosecution).  The conduct prohibited by W.Va. Code § 61-8D-4a is neglect resulting in the death of a child.  Were we to extend the statute to prenatal conduct that affects a fetus in a manner apparent after birth—conduct that would be defined solely in terms of its impact on the victim—the boundaries of proscribed conduct that would subject a pregnant woman to prosecution under W.Va. Code § 61-8D-4a would become impermissibly broad and ill-defined.

"Many types of prenatal conduct can harm a fetus, causing physical or mental abnormalities in a newborn. For example, medical researchers have stated that smoking during pregnancy may cause, among other problems, low birth weight, which is a major factor in infant mortality." *Reinesto v. Superior Ct. of Ariz.*, 182 Ariz. 190, 193, 894 P.2d 733, 736 (Ct.App.1995).  The court in *Reinesto* found that numerous prenatal activities could harm a fetus: (1) drinking alcoholic beverages during pregnancy can lead to fetal alcohol syndrome, a condition characterized by mental retardation, prenatal and postnatal growth deficiencies, and facial anomalies; (2) a pregnant woman's failure to obtain prenatal care or proper nutrition also can affect the status of the newborn child; (3)

13

poor nutrition can cause a variety of birth defects: insufficient prenatal intake of vitamin A can cause eye abnormalities and impaired vision; insufficient doses of vitamin C or riboflavin can cause premature births; (4) poor prenatal care can lead to insufficient or excessive weight gain, which also affects the fetus; and (5) some research has suggested that consuming caffeine during pregnancy contributes to low birth weight. *Id.*

One court outside of our jurisdiction, confronted with this issue, similarly observed that

> if, as the State urges, the statute is read to apply to the effect of a pregnant woman's conduct on the child she is carrying, it could well be construed to include not just the ingestion of unlawful controlled substances but a whole host of intentional and conceivably reckless activity that could not possibly have been within the contemplation of the Legislature—everything from . . . the continued use of legal drugs that are contraindicated during pregnancy, to consuming alcoholic beverages to excess, to smoking, to not maintaining a proper and sufficient diet, to avoiding proper and available prenatal medical care, to failing to wear a seat belt while driving, to violating other traffic laws in ways that create a substantial risk of producing or exacerbating personal injury to her child, to exercising too much or too little, indeed to engaging in virtually any injury-prone activity that, should an injury occur, might reasonably be expected to endanger the life or safety of the child. Such ordinary things as skiing or horseback riding could produce criminal liability. If the State's position were to prevail, there would seem to be no clear basis for categorically excluding any of those activities from the ambit of the statute; criminal liability would depend almost entirely on how aggressive, inventive, and persuasive any particular prosecutor might be.

*Kilmon v. State*, 394 Md. 168, 177-78, 905 A.2d 306, 311-12 (Ct.App.2006).

14

Additionally, the State's suggested construction of W.Va. Code § 61-8D-4a would lead to criminalizing conduct—the prenatal ingestion of drugs—when it results in the birth of a live child, while not criminalizing the same conduct if the unborn child dies in utero. This problem was addressed by the Supreme Court of North Dakota, which ruled that a pregnant woman is not criminally liable for the endangerment of a child for prenatal conduct that harms a subsequently born child. The court stated that to rule otherwise "would create an absurd result. It would criminalize conduct that is not a crime at the time the conduct occurs, is not a crime if the unborn child dies in utero, but is a crime only by virtue of its effect on the child born alive." *State v. Stegall*, 828 N.W.2d 526, 533 (N.D. 2013).

Nevertheless, the State argues that W.Va. Code § 61-8D-4a must be interpreted alongside the common law "born alive" rule. According to the State, this Court previously adopted the "born alive" rule and argues that under this rule, it is "irrelevant that the harm was inflicted upon [Olivia Louk] a day before she was born."[4] The State argues that "the Court must find that a child injured prior to birth but born alive is a 'child' as defined in W.Va. Code § 61-8D-1(2), and may be a victim of parental neglect" pursuant to W.Va. Code § 61-8D-4. We disagree.

---

[4] This Court recognized that a tort action for wrongful death could be brought on behalf of a viable unborn child in Syllabus Point 1 of *Baldwin v. Butcher*, 155 W.Va. 431, 184 S.E.2d 428 (1971).

This Court discussed the common law "born alive" rule in *State ex rel. Atkinson v. Wilson*, 175 W.Va. 352, 332 S.E.2d 807 (1984). In *Atkinson*, the Court acknowledged that "a tort action for wrongful death could be brought on behalf of a viable unborn child." *Id.* at 353, 332 S.E.2d at 808. The Court in *Atkinson* refused to expand the "born alive" rule to cover criminal offenses, holding, "Neither our murder statute, W.Va. Code, 61-2-1, nor its attendant common law principles authorize prosecution of an individual for the killing of a viable unborn child." *Id.*, Syllabus Point 2. Since *Atkinson* was decided, the Legislature passed the Unborn Victims of Violence Act, which provides that a "fetus" can be the victim of certain violent crimes. W.Va. Code § 61-2-30(c). However, the Unborn Victims of Violence Act did not expand the "born alive" rule to cover child neglect resulting in death. In fact, *the Unborn Victims of Violence Act specifically exempted pregnant women from prosecution under the Act.* We therefore decline to adopt the State's argument and expand the "born alive" rule to cover the present situation—a pregnant woman's ingestion of an illegal controlled substance that results in harm to the subsequently born child. In so ruling, we note that "[t]he legislature has the primary right to define crimes and their punishments subject only to certain constitutional limitations." *Atkinson*, Syllabus Point 1.

Finally, we note that the overwhelming majority of the jurisdictions confronted with the prosecution of a mother for prenatal conduct causing harm to the subsequently born child, refuse to permit such prosecutions. *See Arms v. State*, 2015 Ark. 364, 471 S.W.3d 637 (2015) (Defendant's unborn child was not a "person," for purposes

16

of statute governing criminal offense of introduction of a controlled substance into the body of another person, and thus none of defendant's actions prior to birth of child violated statute; criminal code expressly limited criminalizing conduct with respect to unborn child to homicide offenses and even then did not allow a mother to be charged or convicted of any homicide offense while her child was in utero); *State v. Stegall*, *supra* (pregnant woman cannot be charged for a crime allegedly committed against her unborn child; unborn fetus was not a "child" within meaning of endangerment statute); *State v. Martinez*, 139 N.M. 741, 137 P.3d 1195 (Ct.App.2006) (holding an unborn viable fetus is not a "human being" under the New Mexico child abuse statute and the mother's use of cocaine during pregnancy was not child abuse); *Kilmon v. State*, *supra* (holding a mother may not be held criminally liable under a reckless endangerment statute for the effect that prenatal ingestion of a controlled substance may have on her child, pre- or post-birth); *State v. Aiwohi*, 109 Hawai'i 115, 123 P.3d 1210 (2005) (holding, for purposes of establishing the offense of reckless manslaughter against a pregnant woman, a fetus is not a person); *State v. Deborah J.Z.*, *supra* (holding that defendant mother's fetus was not a human being for the purposes of the attempted first degree intentional homicide and first degree reckless injury statutes); *State v. Ashley*, 701 So.2d 338, 342 (Fla.1997) (stating that to allow the manslaughter prosecution of a mother for prenatal conduct "would require that this Court extend the 'born alive' doctrine in a manner that has been rejected by every other court to consider it"); *State v. Dunn*, 82 Wash.App. 122, 916 P.2d 952 (1996) (holding an unborn child is not a child for purposes of criminal prosecution of

17

mistreatment of a child); *Reinesto v. Superior Ct. of Ariz.*, *supra* (holding a mother was not criminally liable for knowingly causing injury to a child under circumstances likely to produce death or serious physical injury after the mother's pre-birth ingestion of heroin caused her child to suffer heroin withdrawal symptoms postpartum); *Collins v. State*, 890 S.W.2d 893 (Tex.Ct.App.1994) (holding a fetus is not a child, person, or individual for purposes of criminal prosecution under the reckless injury to a child statute); *Sheriff, Washoe Cnty. v. Encoe*, 110 Nev. 1317, 885 P.2d 596 (1994) (holding a criminal charge of endangerment of a child does not apply to a pregnant woman who ingests an illegal substance that results in the transmission of drugs to her child through the umbilical cord); *Commonwealth v. Welch*, 864 S.W.2d 280 (Ky.1993) (holding a mother's ingestion of a controlled substance while pregnant does not constitute child abuse, as an unborn child is not a person for purposes of criminal prosecution); *State v. Gray*, 62 Ohio St.3d 514, 584 N.E.2d 710 (1992) (holding Ohio's child endangerment statute does not apply to mothers who abuse drugs during pregnancy); *People v. Morabito*, 580 N.Y.S.2d 843, 847 (N.Y.City.Ct.1992) (holding that the defendant mother could not be charged with endangering the welfare of a child based upon prenatal acts endangering an unborn child); *State v. Gethers*, 585 So.2d 1140 (Fla.Ct.App.1991) (holding child abuse statute clearly did not apply to fetuses and, therefore, did not apply to a mother who ingested cocaine during pregnancy); *People v. Hardy*, 188 Mich.App. 305, 469 N.W.2d 50 (1991) (holding a pregnant woman who uses cocaine is not criminally liable for delivery of a controlled substance, despite the possibility the drug may transfer to her infant

18

postpartum via the umbilical cord); *Reyes v. Superior Ct. of San Bernardino Cnty.*, 75 Cal.App.3d 214, 141 Cal.Rptr. 912 (1977) (holding a mother not criminally liable for child endangerment for ingesting heroin while pregnant).[5]

In conformance with the overwhelming majority view, and the plain language of our statute, we hold that the Legislature did not make any reference to an "unborn child" or "fetus" in W.Va. Code § 61-8D-4a. The statute only refers to a parent

---

[5] Contrary to the majority of states, South Carolina and Alabama have held an unborn child is a child, person, or individual for purposes of criminal prosecution. *See Ankrom v. State*, 152 So.3d 373 (Ala.Crim.App.2011) (holding an unborn child is a child for purposes of prosecuting chemical endangerment of a child); *Whitner v. State*, 328 S.C. 1, 492 S.E.2d 777 (S.C. 1997), *cert. denied*, 523 U.S. 1145, 118 S.Ct. 1857, 140 L.Ed.2d 1104 (1998) (holding a woman may be prosecuted for child neglect and endangering a child for prenatal substance abuse). South Carolina Supreme Court Justice James E. Moore filed a dissenting opinion in *Whitner* in which he criticized the majority opinion for engaging in judicial activism and argued that the legislative branch was the proper place for this issue to be resolved. Justice Moore stated:

> In my view, the repeated failure of the legislature to pass proposed bills addressing the problem of drug use during pregnancy is evidence the child abuse and neglect statute is not intended to apply in this instance. This Court should not invade what is clearly the sole province of the legislative branch. At the very least, the legislature's failed attempts to enact a statute regulating a pregnant woman's conduct indicate the complexity of this issue. . . . [I]t is for the General Assembly, and not this Court, to make that determination by means of a clearly drawn statute. With today's decision, the majority not only ignores legislative intent but embarks on a course of judicial activism rejected by every other court to address the issue.

*Id.*, 328 S.C. at 21, 492 S.E.2d at 787.

neglecting "a child" under his or her care, custody or control. Therefore, W.Va. Code § 61-8D-4a, our child neglect resulting in death statute, does not encompass prenatal acts that result in harm to a subsequently born child. Thus, a pregnant woman who ingests a controlled substance that results in harm to her subsequently born child is not criminally liable for child neglect resulting in death based on the plain language of W.Va. Code § 61-8D-4a.

While we conclude that W.Va. Code § 61-8D-4a does not apply to prenatal conduct that results in harm to a subsequently born child, we are troubled by the present case and wish to emphasize our great concern with the issue raised herein. The Supreme Court of Arkansas recently addressed this issue, stating: "No one wishes to discourage pregnant women who are fighting an addiction from seeking treatment and rehabilitation for substance abuse. The argument has been made that criminal prosecutions will have that effect. However, that balancing of legitimate policies is to be made by the legislature, and not by this court." *Arms v. State*, 2015 Ark. at 377, 471 S.W.3d at 645 (Brill, Howard W., Chief Justice, concurring). According to the brief filed by the amici curiae, the *American Medical Association* "opposes legislation which criminalizes maternal drug addiction." The AMA has warned against the deterrent effect of threats of such punishment because:

> Pregnant women will be likely to avoid seeking prenatal or open medical care for fear that their physician's knowledge of substance abuse or other potentially harmful behavior could result in a jail sentence rather than proper medical treatment.

20

Am. Med. Ass'n Bd. of Trustees, *Legal Interventions During Pregnancy*, 264 J. Am. Med. Ass'n 2663, 2667 (1990).

"A court should not place a tenuous construction on [a] statute to address a problem to which the legislative attention is readily directed and which it can readily resolve if in its judgment it is an appropriate subject of legislation. . . . [I]f a legally cognizable duty on the part of pregnant women to their developing fetuses is to be recognized, the decision must come from the legislature only after thorough investigation, study and debate." *State v. Gray*, 62 Ohio St.3d at 518, 584 N.E.2d at 713 (internal citation omitted).

## IV.

## CONCLUSION

For the reasons set forth herein, we vacate Ms. Louk's conviction and sentence, and remand this matter to the circuit court for entry of a judgment of acquittal on the indictment returned against her in this action.

Vacated and Remanded for Judgment of Acquittal.

21