# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* A.C.-1

No. 18-0062 (Ohio County 16-CJA-22)

**FILED**

**May 18, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father A.C.-2, by counsel Betsy Griffith, appeals the Circuit Court of Ohio County's December 13, 2017, order terminating his parental rights to A.C.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joseph J. Moses, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that he was an abusing parent and in terminating his parental rights without the imposition of a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2016, the DHHR filed a petition alleging that the mother of petitioner's child tested positive for multiple controlled substances prior to giving birth to A.C.-1 and A.C.-1's twin, who was not born alive. A.C.-1 was born prematurely and required extensive treatment in the neonatal intensive care unit. Physicians expect the child will require consistent ongoing specialized medical care as he matures. The DHHR alleged that the mother abused controlled substances throughout her pregnancy and admitted that she struggled with addiction. According to the petition, petitioner instituted a mental hygiene proceeding against the mother seeking involuntary hospitalization after the birth and asserted that the mother was "shooting herself up with needles using heroin, crack, cocaine, and pills . . . ." The DHHR further alleged that

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and petitioner share the same initials, we refer to the child as A.C-1 and petitioner as A.C.-2 throughout this memorandum decision.

petitioner had been dating the mother for a year and a half and, despite his knowledge of the mother's drug use, took no action to stop her drug abuse. Additionally, the DHHR alleged that petitioner had an extensive criminal history, including convictions for drug-related offenses, and a history of drug use. Finally, the DHHR alleged that A.C.-1 was a child whose health or welfare was harmed or threatened by petitioner's refusal, failure, and/or inability to supply him with necessary food, clothing, shelter, supervision, medical care or education. Petitioner waived his preliminary hearing.

Petitioner moved for paternity testing, and the circuit court granted the motion in April of 2016. The circuit court received an update that the child was on a ventilator and in very serious condition. Although not all of his complications were drug-related, the physician noted that the child suffered withdrawal symptoms in addition to issues related to his premature birth and twin-to-twin transfusion syndrome. The mother stipulated to adjudication; petitioner's adjudicatory hearing was continued pending paternity testing. Before the circuit court held petitioner's adjudicatory hearing, the mother withdrew her motion for a post-adjudicatory improvement period and voluntarily relinquished her parental rights.

In August of 2016, petitioner filed a motion to dismiss the petition arguing that he could not have abused or neglected A.C.-1 because West Virginia Code § 49-1-201 refers to a child as "any person under eighteen years of age" which does not include an unborn child or a fetus. See *State v. Louk*, 237 W.Va. 200, 786 S.E.2d 219 (2016)[2]. The circuit court heard evidence regarding petitioner's motion and allegations of abuse and neglect against petitioner. A social worker from Ruby Memorial Hospital testified that petitioner visited the child only seventeen times in the five months since the petition was filed. The social worker testified that petitioner and the mother were both permitted to stay in the hospital or in nearby hospital housing to facilitate visitation, but did not do so. Also, the social worker testified that petitioner completed a newborn care class. A DHHR worker testified that, after the mother's relinquishment, petitioner and the mother continued to be in a relationship. The DHHR worker testified that petitioner was participating in drug screening as required with drug-free results. Petitioner testified that he was living with the mother at the time the petition was filed and was aware that she was using controlled substances while pregnant. He testified that he caught the mother using drugs in the house a few times and would either make her leave or dispose of the drugs. He testified that he took her to a clinic where she received a prescription for Suboxone, but that neither he nor the mother could afford to have the prescription filled. He testified that he took the mother to an inpatient treatment program, but she refused to be admitted voluntarily once she arrived. Petitioner testified that he attended two prenatal visits and discussed the mother's drug use with the doctor. Petitioner testified that after the mother's relinquishment, he applied for an emergency protective order to restrain the mother from contacting him. He testified that the mother broke into his home on a number of occasions, but that he never attempted any

---

[2]In *State v. Louk*, 237 W.Va. 200, 786 S.E.2d 219 (2016), this Court held that an unborn fetus was not a "child" within the meaning of West Virginia Code § 61-8D-1(2). The definition of child in that statute provides that "'[c]hild' means any person under eighteen years of age not otherwise emancipated by law." West Virginia Code § 49-1-201, which contains the definitions for child abuse and neglect proceedings, provides the same definition of "child."

interventions other than the emergency protective order. Petitioner testified that he did not attempt an involuntary commitment while the mother was pregnant, but only did so after she had given birth. Petitioner's mother testified that she helped encourage the mother to attend drug treatment. At a prior hearing, the mother of A.C.-1 testified that petitioner tried to keep her from using drugs by kicking her out of the house and by taking her to a Suboxone clinic. The treating physician testified that the child will need long-term care and will have several necessary medical appointments in the future.

Following the adjudicatory hearing, the circuit court submitted a certified question to this Court before ruling on petitioner's motion to dismiss. The circuit court asked the following "Is a Petition for Relief from Parental Abuse and Neglect alleging abuse and/or neglect of an unborn child who is subsequently born alive, actionable under West Virginia Law?" In June of 2017, this Court reformulated the question to "When a child is born alive, is the presence of illegal drugs in the child's system at birth sufficient evidence that the child is an abused and/or neglected child to support the filing of an abuse and neglect petition?" and answered in the affirmative. *In re A.L.C.M.*, 239 W.Va. 382, 801 S.E.2d 260 (2017).

While the certified question was pending in this Court, the DHHR filed two amended petitions alleging that petitioner continued to have contact with the mother after she relinquished her parental rights; two domestic violence incidents occurred between petitioner and the mother; petitioner had not completed the training required to care for the child; and that petitioner was charged with multiple crimes on different dates, including driving under the influence, driving while license revoked, and possession of crack cocaine.

In August of 2017, the circuit court heard testimony on the amended petitions from multiple police officers and DHHR workers. An officer from Morgantown, West Virginia, testified that he pulled petitioner over and charged him with driving under the influence of a controlled substance in February of 2017. Additionally, the police officer testified that petitioner's vehicle showed signs of drug trafficking, such as "false hides" and easy to remove paneling inside the vehicle. An officer from Wheeling, West Virginia, testified that he responded to a domestic incident in October of 2016, where he heard yelling and loud thumping noises coming from inside petitioner's home; the officer found petitioner and the mother together. The officer testified that the mother appeared dazed and one of her fingers was bleeding. A toxicologist testified that in August of 2017, petitioner twice tested positive for both cocaine and alcohol. Ultimately, the circuit court found petitioner knew or should have known that the mother abused controlled substances while pregnant and he took insufficient steps to stop her drug abuse. The circuit court reasoned that petitioner could have filed a mental hygiene petition against the mother or reported her activity to the police, but did not do so during her pregnancy. The circuit court also found that petitioner had opportunities to visit with the child and to attend medical appointments, but did not do so. Further, the circuit court found petitioner continued to be involved with the mother and in criminal activity, contrary to petitioner's previous testimony. The circuit court concluded petitioner knowingly allowed the mother to inflict physical, mental and emotional injury upon the child and that A.C.-1 was "harmed or threatened by [petitioner's] refusal, failure or inability to supply [the child] with necessary food, clothing, shelter, supervision, medical care or education . . . ." The circuit court adjudicated petitioner as an abusing parent.

In November of 2017, the circuit court held a dispositional hearing, during which petitioner indicated that he would plead guilty to his most recent criminal charge and would be unable to participate in an improvement period. Petitioner requested disposition pursuant to West Virginia Code § 49-4-604(b)(5), the appointment of a temporary legal guardianship until he was released from incarceration. The DHHR and the guardian sought termination of petitioner's parental rights and argued that his recent criminal conduct was a continuation of his history of criminal activity and that no improvement was possible.

Ultimately, the circuit court found that petitioner continued to engage in drug use, drug possession, and drug trafficking; continued to engage in dangerous activities and associate with inappropriate persons; and maintained contact with the mother after her relinquishment. Further, petitioner intended to accept a plea that would result in one to three years of incarceration. The circuit court therefore found no reasonable likelihood that the conditions of abuse or neglect could be remedied in the near future and that petitioner would be unable to provide appropriate care to A.C.-1, who was a medically fragile child. The circuit court terminated petitioner's parental rights to A.C.-1 in its December 13, 2017, order.[3] Petitioner now appeals that order.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner first argues that the circuit court erred in finding that he failed to act to protect the child from the mother's drug use and in relying on his arrest after the child's birth as evidence of abuse and neglect. Petitioner argues that he did not condone the mother's drug use and took steps to protect the child, such as transporting the mother to treatment and discouraging

---

[3]The mother voluntarily relinquished her parental rights on July 11, 2016. According to the parties, the child is currently in foster placement. The permanency plan is adoption in that foster home.

her substance abuse. Petitioner also argues that the circuit court erred in relying on his arrest as a factor for adjudication, as that alone should not be enough to adjudicate a parent. We find, however, that it is unnecessary to address petitioner's assignment of error that the circuit court erred in finding that he failed to protect the child from the mother's drug use because the circuit court also found that he abused or neglected the child through additional acts and omissions.[4]

West Virginia Code § 49-1-201, in relevant part, defines a neglected child as one "[w]hose physical or mental health is harmed *or threatened* by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, *supervision*, *medical care* or education . . . ." (emphasis added). The circuit court correctly adjudicated petitioner as an abusing parent because he demonstrated a lack of appropriate supervision and inadequate medical care of A.C.-1. Petitioner took no training to provide the specialized care for the child. The record is clear that A.C.-1 has very specialized medical needs that will require constant long-term attention. Although petitioner initially visited the child during his hospital stay, he stopped attending medical appointments and never exhibited any knowledge on how to properly care for the child's special needs. Petitioner's lack of interest created an enormous threat to the health of medically fragile A.C.-1 if he were placed in petitioner's care. Petitioner testified that he suffered from a lack of transportation from Wheeling to Morgantown to visit with the child and to participate in medical visits. However, petitioner was in Morgantown when he was arrested for driving under the influence and did not visit with the child on that day.

Further, petitioner continued to associate with inappropriate people, including the mother after she voluntarily relinquished her rights, and could not provide a safe home environment, as evidenced by multiple domestic violence incidents during the proceedings. Contrary to petitioner's testimony, he continued to be involved with the mother and to engage in dangerous criminal activity. The circuit court found that the police officers involved in petitioner's arrests confiscated large sums of cash, found controlled substances, and believed that petitioner's vehicle was outfitted with "false hides" which was indicative of drug trafficking. Petitioner did not testify to rebut the allegations of domestic violence, continued association with inappropriate people, or ongoing drug trafficking involvement. "Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against [him] during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability." Syl. Pt. 2, *In re K.P.*, 235 W.Va. 221, 772 S.E.2d 914 (2015). These allegations support the circuit court's conclusion that A.C-1's "physical or mental health was harmed or threatened by [petitioner's] refusal, failure or inability to supply the child with necessary food, clothing, shelter, supervision, medical care or education . . . ." Petitioner's argument on appeal, that the circuit court improperly found he failed to protect the child from the mother's drug abuse and that the circuit court improperly adjudicated him solely on his criminal arrest, is meritless when considering the other forms of neglect the circuit court found as described herein.

---

[4]Although petitioner argues that his arrests were after the child's birth and, therefore, should not be used as evidence against him, the amended petitions include his arrests as an allegation and the DHHR properly presented that evidence at the second adjudicatory hearing.

Accordingly, we find that the circuit court did not err in adjudicating petitioner as an abusing parent.

Petitioner also argues that the circuit court erred in terminating his parental rights and refusing to grant disposition pursuant to West Virginia Code § 49-4-604(b)(5), which provides that a circuit court may appoint a temporary guardian for a child upon a finding that "the abusing parent . . . [is] presently unwilling or unable to provide adequately for the child's needs." Petitioner asserts that he was only temporarily unable to parent A.C.-1 due to his incarceration and that a temporary guardianship would have been a more appropriate disposition given the circumstances. We disagree.

West Virginia Code § 49-4-604(b)(6) provides that, upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child," the circuit may terminate the parental rights of an abusing parent. We have previously held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 at 91, 717 S.E.2d at 875, Syl. Pt. 4. The circuit court correctly found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future because petitioner specifically informed the circuit court that he would not be able to participate in an improvement period. Given petitioner's history and his decisions during the proceedings, the circuit court found no reason that the conditions of abuse and neglect would be corrected without some intervention and petitioner declined to participate in that intervention. Further, the circuit court correctly found that termination was necessary for the welfare of A.C.-1, as his special medical needs require consistent attention and continuity of care. Pursuant to West Virginia Code § 49-4-604(b)(5), the circuit court may terminate parental rights upon these findings. Accordingly, we find no error in the circuit court's determination that the conditions of neglect or abuse could not be substantially corrected in the near future and that the welfare of the child required termination of parental rights, rather than a less-restrictive dispositional alternative.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 13, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: May 18, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

**CONCURRING, AND WRITING SEPARATELY:**

Justice Robin Jean Davis

Davis, Justice, concurring:

I agree with the majority's ultimate conclusion that the new allegations of abuse and neglect set forth in the DHHR's amended petitions support the circuit court's decision to terminate the Father's parental rights to the infant child in this case. However, I strongly disagree with the circuit court's additional finding that the Father "took insufficient steps to stop [the Mother's] drug abuse" while she was pregnant with the subject child. Rather, the record is replete with evidence that the Father tried several times to curtail the Mother's prenatal drug use, including driving her to a Suboxone clinic, attending her prenatal doctor's appointments, encouraging her to voluntarily commit herself to an inpatient rehabilitation facility, and actively opposing her use of drugs in his home. Simply because the Father was not successful in his efforts does not mean he did not try or that he stood idly by while the Mother abused drugs during her pregnancy. Because the circuit court refuses to acknowledge the Father's efforts in this regard, I disagree with the majority's implicit affirmance of such finding. Nevertheless, in light of the recent developments in this case calling into question the Father's fitness to parent his child, I concur in the majority's decision to terminate his parental rights to A.C.-1.